David H. Bernstein (dhbernstein@debevoise.com)
Jeremy Feigelson (jfeigelson@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

Attorneys for Plaintiff
The Daily Holdings, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
THE DAILY HOLDINGS, INC.,                              :

                  Plaintiff,                 :          **ECF Case**

    -against-                                                    :          10 Civ. 9204 (NRB)

IMG WORLDWIDE, INC. and DAILY FRONT ROW,   :          **AMENDED**
INC.,                                                                                **COMPLAINT**
                                                      :
                  Defendants.
                                                      :
-----------------------------------------------------------------------x

Plaintiff The Daily Holdings, Inc. ("TDH"), by its attorneys Debevoise & Plimpton LLP, for its Amended Complaint against Defendants IMG Worldwide, Inc. ("IMG") and Daily Front Row, Inc. ("DFR"), alleges as follows:

### Nature Of The Action

1. This case is brought to confirm the simple proposition that nobody can own the words "the daily" when used in the name of a media outlet.

2. Earlier this month, TDH launched a pathbreaking new general-interest daily publication for tablet devices, called *The Daily* and identified by this distinctive stylized logo:



*The Daily* is the first major tablet-only media outlet. It currently is available on the Apple iPad tablet device. Each day, *The Daily* delivers broad-gauged, custom-crafted coverage of news, the arts, lifestyle, sports and opinion, all in a unique format that maximizes the special qualities of tablet devices.

3. There is a fashion industry niche publication called *The Daily Front Row*, which has an associated website, <www.dailyfrontrow.com>, and certain sister publications. Until December 2010, *The Daily Front Row* was owned by defendant IMG. On or about December 21, 2010, *The Daily Front Row* was acquired by defendant DFR. At all times, *The Daily Front Row* has been controlled and operated on a day to day basis by Ms. Brandusa Niro, who has publicly stated that she personally owns a controlling interest in DFR. With the recent acquisition, she has gone from being just the operational head of *The Daily Front Row* to also being its principal owner.

4. Ms. Niro contends that *The Daily Front Row* is nicknamed "The Daily." Late last year, Ms. Niro and IMG asserted that IMG owned common-law trademark rights in the nickname "The Daily," and further asserted that TDH's *The Daily* would

infringe those purported rights.  Ms. Niro and IMG also asserted that TDH's *The Daily* would infringe IMG's registered trademark in the name "The Daily Front Row."

5. Following its sale of *The Daily Front Row* to DFR, IMG continued to take the position that it had owned common-law trademark rights in the nickname "The Daily," and that it had transferred those common law rights to DFR.  As part of DFR's acquisition of *The Daily Front Row*, IMG transferred its federally-registered trademarks for "The Daily Front Row," and its pending applications to register the nickname "The Daily," to DFR.

6. Since DFR's acquisition of *The Daily Front Row,* it has not disavowed Ms. Niro's earlier threats to bring an infringement action.  Instead it has taken steps that have increased TDH's apprehension of a trademark challenge.

7. TDH asks the Court to set the words "the daily" free by declaring that the threatened infringement claims and continued claims of trademark rights in "the daily" are meritless.  "The daily" is a generic phrase for any media outlet that is updated on a daily basis.  IMG could not own that phrase as the name of a publication, and therefore could not transfer ownership to DFR.  DFR therefore has not acquired, and as a matter of law could not possibly own, any rights in the words "the daily" as a trademark. Using its authority under the Declaratory Judgment Act, this Court should put an end to any claims that DFR can or does own the words "the daily" as the trademarked name of a media outlet, and should also put an end to any claims that TDH's use of  the words "the daily" for its daily news outlet infringes any rights of DFR.

**Parties**

8.TDH is a corporation organized and existing under the laws of Delaware. TDH's offices are located in New York City.

9.Upon information and belief, IMG is a corporation organized and existing under the laws of Ohio with offices in Cleveland, Ohio, New York City and elsewhere. IMG holds itself out as a global sports, entertainment and media business.

10.Upon information and belief, DFR is a corporation organized and existing under the laws of New York with offices in New York City.

**Jurisdiction and Venue**

11.This Court has original jurisdiction over the subject matter of this action under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367(a). There is an actual justiciable controversy between the parties arising under, *inter alia*, the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq*.

12.Declaratory relief is proper under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57.

13.Personal jurisdiction is proper over IMG (a) because IMG regularly transacts and conducts business in this District, including the maintenance in New York City of offices and staff, and (b) pursuant to N.Y.C.P.L.R. § 302(a). Personal jurisdiction also is proper by virtue of IMG's designation of an agent in New York for service of process pursuant to N.Y.C.P.L.R. § 318.

14.     Personal jurisdiction is proper over DFR because DFR is a corporation organized under the laws of the State of New York, maintains offices and staff in New York City and regularly transacts business in this state.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to these claims arose in this District and because both IMG and DFR are subject to personal jurisdiction in this District.

## Facts

**A.**     *The Daily*

16.     *The Daily* launched on February 2, 2011 and is the first national, daily, general-interest publication created exclusively for tablet devices.  It was advertised during the February 6, 2011 broadcast of the Super Bowl, introducing this innovative media offering to a national audience of more than 100 million viewers.  *The Daily* is now available on the iPad on a paid subscription basis (it is currently in a two-week, complimentary trial period).

17.     *The Daily* has a fresh, exciting look and feel unmatched by anything in print, broadcast or on the Web.  Every screen is designed to take full advantage of the unique capabilities of tablet devices.  *The Daily* has been hailed as a breakthrough in digital journalism; in the words of one leading analyst, it has "set a new standard."  There is no print edition of *The Daily*.  Only limited portions of *The Daily*'s content are posted to its associated website, <www.thedaily.com>.

18. As shown below, *The Daily*'s stylized logo appears prominently throughout the publication, including in the upper left hand corner of every page:

  

 

### B. Use Of "The Daily" In The Media World

19. Given their generic nature, the words "the daily" simply cannot constitute a trademark for a publication. The words "daily" or "the daily" in the media world are widely understood to denote any outlet that is updated, produced or distributed on a daily basis (or at least every weekday). The first definition for the noun "daily" on Merriam-Webster's online dictionary is "a newspaper published every weekday." The second definition for the adjective "daily" is "issued every day or every weekday <a *daily*

6

newspaper>." A Google search for "the daily" yields millions of results. These include nationally renowned publications, television shows and websites that are produced or updated on a daily basis such as *The Daily Show*, *The Daily Beast* and *Daily Kos*, as well as other publications such as the newspaper of Northwestern University, *The Daily Northwestern*, and an online blog called *TheDailyWhat*. Numerous media outlets, such as the University of Washington newspaper, not only use "Daily" in their names but use the phrase "The Daily" as their official or unofficial name.

20. Hundreds if not thousands of media outlets use "daily" or "the daily" in their titles. A number of such titles are federally registered as trademarks, substantially all of which disclaim the word "daily" – as do the registrations for DFR's publication, *The Daily Front Row*. According to the Newspaper Association of America, 379 United States newspapers have the word "Daily" in their title.

C. **IMG And The Initial Threatened Trademark Claims**

21. *The Daily Front Row* is a print and web publication exclusively devoted to



the fashion industry. *The Daily Front Row*'s website, <www.dailyfrontrow.com>, proclaims to readers, "This is where fashion happens, 24/7, 365 days a year," and promises "[n]ews, scene, photos, obsessions, parties, launches, and runway, runway, runway!" The print version of *The Daily Front Row* (a sample cover of which is shown at right) is printed and distributed every day of New York Fashion

Week, and daily during comparable special events held in Miami and elsewhere.  *The Daily Front Row* also has an iPad application, launched a few months ago, that sells digital replicas of past print issues.

22. Although confusion is not relevant in the context of a generic and unprotectible phrase, no reader could possibly confuse *The Daily Front Row* with *The Daily*.  *The Daily Front Row* bears no resemblance to *The Daily* in content, design, target audience or otherwise.  *The Daily Front Row* focuses only on fashion and lacks stories on almost all of the topics that are covered by *The Daily*, such as national and international breaking news, politics, government, the economy, opinion, lifestyles and sports.

23. Despite the generic and unprotectible nature of the words "the daily" and the disclaimer of "daily" in federal trademark registrations for *The Daily Front Row*, late last year IMG and Ms. Niro began a campaign of saber-rattling designed to interfere with *The Daily*'s launch.

24. On November 22, 2010, Forbes.com posted an interview with Ms. Niro in which Ms. Niro expressed her purported concern about the launch of *The Daily* and alleged "significant confusion" between it and *The Daily Front Row*.  *See* Exhibit A.  The same day, IMG filed a trademark application with the United States Patent and Trademark Office for the word mark "The Daily" for "a website featuring online publications in the field of fashion; publication of electronic magazines and event programs."  *See* Exhibit B.

25. The following day, outside counsel for IMG wrote to News Corporation, TDH's parent company, and asserted that IMG owned two United States trademark

registrations for "The Daily Front Row," that it claims common-law trademark rights in "The Daily," and that both its federal registrations and its purported common-law rights would be infringed by *The Daily*. Counsel for IMG further stated that the proposed use of the title *The Daily* would confuse IMG's readers and that News Corporation should adopt a different mark. *See* Exhibit C.

26. On December 1, 2010, TDH responded through its counsel that the words "the daily" cannot constitute a trademark for a publication because those words are generic and unprotectible, and denote any sort of media outlet that is produced or updated on a daily basis. TDH nonetheless invited representatives from IMG to a meeting so that TDH could hear more about IMG's concerns and attempt to answer any questions IMG had about TDH's plans. *See* Exhibit D.

27. On December 6, 2010, IMG filed an trademark application with the United States Patent and Trademark Office for the word mark "The Daily" for "[m]agazines in the field of fashion and the fashion industry." *See* Exhibit E. This trademark application raised TDH's concerns about IMG's intentions and its intent to challenge TDH's use of "The Daily" as the name of its news application.

28. On December 9, 2010 a meeting between TDH and IMG took place. Ms. Niro was the senior businessperson and principal spokesperson for IMG at that meeting. TDH was persuaded by the statements and demeanor of IMG's representatives at the meeting, particularly Ms. Niro, that a lawsuit against TDH was not only likely but imminent. TDH therefore filed a Complaint in this action against IMG on December 9,

9

seeking declaratory relief.  TDH served IMG with the Complaint on that same day.  IMG's response to the Complaint was due by December 30, 2010.

### D.      Sale of *The Daily Front Row* to DFR

29.    Upon information and belief, IMG sold *The Daily Front Row* to DFR on or about December 21, 2010.  The following day, counsel for IMG advised counsel for TDH that IMG had sold to DFR its purported trademark rights in "The Daily" as well.  Thus, even after its transaction with DFR, and even after it had been served with TDH's Complaint, IMG continued to assert that that "The Daily" is a valid mark, that it had owned legal rights in that mark, and that it had sold those rights to DFR, which was now the owner of that purported mark.  *See* Exhibit F.

30.    IMG also indicated that it does not plan to defend this lawsuit.  *Id*.; *see also* Exhibit G.  TDH thereafter offered to dismiss IMG if IMG would confirm, *inter alia*, that it will not assert a claim against TDH regarding "The Daily" and will not claim that the words "The Daily" can function as a trademark for a media outlet.  *See* Exhibit H, pp. 3–4.  IMG has not accepted that offer.

31.    Although IMG has maintained its position that "The Daily" constitutes a valid trademark, that it owned such trademark rights, and that it sold those rights to Ms. Niro's DFR, IMG has defaulted in this case.  Its response to the Complaint was due on December 30, 2010.  It never filed any answer.  On February 4, 2011, the Clerk issued a Certificate of Default.  *See* Exhibit I.  On February 11, 2011, TDH submitted to the Clerk an application for a default judgment against IMG.

32. In the meantime, Ms. Niro has continued to run *The Daily Front Row* as editor-in-chief, as she did when IMG owned the publication. An IMG press release and Ms. Niro's own comments to the press confirm that Ms. Niro owns a controlling interest in DFR. *See* Exhibit J.

33. It was Ms. Niro's threatening public comments (*see* Exhibit A), the threatening letter sent at Ms. Niro's direction by counsel (*see* Exhibit C), and the threatening comments made by Ms. Niro at the December 9, 2010 meeting that led TDH to file its original Complaint. Ms. Niro has resisted recent efforts by TDH to get her to disclaim her past threats or otherwise clarify her position. Moreover, DFR's counsel has contended in a letter to this Court that DFR acquired trademark rights in "The Daily" from IMG, and DFR has taken an assignment from IMG of two trademark applications, now pending in the United States Patent and Trademark Office, for "The Daily." *See* Exhibits B and E . These steps clearly signal an intent on the part of DFR to pursue hostilities against TDH and *The Daily*; TDH can only conclude that Ms. Niro holds the same intent to sue on behalf of DFR that she held on behalf of IMG. Though such claims would have no merit, the prospect that even a meritless litigation will deter advertisers, sources, consumers and others from doing business with *The Daily* is all too real. TDH cannot stand idly by and allow a cloud to be placed over its newly-launched tablet publication.

## FIRST CAUSE OF ACTION
(Declaration That IMG Lacked Common-Law Rights In "The Daily," that IMG Thus Lacked any Such Common Law Rights to Transfer to DFR, and that DFR Has No Common Law Rights in "The Daily")

34.     TDH repeats and realleges the foregoing paragraphs of the Amended Complaint as though fully set forth herein.

35.     The actions of IMG, Ms. Niro and DFR described above present an actual and ripe controversy between parties with genuine adverse interests.

36.     This Court should declare that the words "the daily" are generic and not a protectible trademark for the name of a publication, including, without limitation, under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), under New York law, or any other state's law.

## SECOND CAUSE OF ACTION
(In the Alternative, Declaration of No Infringement of DFR's Common-Law Marks)

37.     TDH repeats and realleges the foregoing paragraphs of the Amended Complaint as though fully set forth herein.

38.     The actions of IMG, Ms. Niro, and DFR described above present an actual and ripe controversy between parties with genuine adverse interests.

39.     Should this Court find that DFR owns common-law trademark rights in the words "the daily," a position TDH believes is erroneous, this Court should declare that there is no infringement under section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), under federal common law, and under state statutory and common law because, *inter alia*, there was and is no likelihood of confusion.

### THIRD CAUSE OF ACTION
(Declaration of No Infringement of IMG's and DFR's Registered Marks)

40. TDH repeats and realleges the foregoing paragraphs of the Amended Complaint as though fully set forth herein.

41. The actions of IMG, Ms. Niro and DFR described above present an actual and ripe controversy between parties with genuine adverse interests.

42. This Court should declare that TDH's use of *The Daily* did not infringe IMG's federally-registered trademarks, when it was the owner of those marks, and does not infringe DFR's federally-registered trademarks, including without limitation that there is no infringement under the Lanham Act 15 U.S.C. § 1114, because, *inter alia*, there is no likelihood of confusion.

### PRAYER FOR RELIEF

WHEREFORE, TDH prays this Court for:

a) A declaration that "the daily" is a generic phrase that cannot constitute a common law trademark for a publication under section 43(a) of the Lanham Act, 15 U.S.C § 1125(a), under federal common law, and under state statutory and common law.

b) A declaration that TDH's use of *The Daily* does not constitute infringement of any of DFR's common law trademark rights, to the extent that such common law rights exist, under section 43(a) of the Lanham Act, 15 U.S.C. §1125(a),

under federal common law, and under state statutory and common law because, *inter alia*, there is no likelihood of confusion.

c) A declaration that TDH's use of *The Daily* does not constitute infringement of any of IMG's federally registered trademarks under 15 U.S.C. § 1114.

d) A declaration that TDH's use of *The Daily* does not constitute infringement of any of DFR's federally registered trademarks under 15 U.S.C. § 1114 because, *inter alia*, there is no likelihood of confusion.

e) A permanent injunction forbidding IMG from any further assertion of purported trademark rights vis-à-vis *The Daily*.

f) A permanent injunction forbidding DFR from any further assertion of purported trademark rights vis-à-vis *The Daily*.

g) An award of costs, including TDH's reasonable attorneys' fees in this action.

h) Such other and further relief as the Court may deem just and proper.

[Signature page follows]

23373736v1

Dated: New York, New York
       February 14, 2011

                    DEBEVOISE & PLIMPTON LLP

                    By: /s/ Jeremy Feigelson
                    David H. Bernstein (dhbernstein@debevoise.com)
                    Jeremy Feigelson (jfeigelson@debevoise.com)
                    919 Third Avenue
                    New York, New York 10022
                    (212) 909-6696

                    Attorneys for Plaintiff The Daily Holdings, Inc.